I want to welcome everyone to the Fourth Circuit this morning. We have four interesting cases and look forward to the arguments of counsel. Professor Rutledge, I understand you're going to introduce the young man who's going to argue the case? Thank you, Judge. Judge Kingen, may it please the court, Peter Rutledge, University of Georgia's amicus curiae in support of the appellant. Appearing with me today are Mr. Lucas Bradley and Mr. Matthew Noller, both students of the University of Georgia School of Law Appellate Litigation Clinic. Also in the courtroom today, the appellant, Mr. Solomon Stratton, his mother and one of his siblings. This court has asked us to brief and argue the question whether the district court erroneously dismissed this case pursuant to the Rooker-Feldman doctrine. It also invited us to brief any other issues that we deemed meritorious. By prior arrangement with this court, Mr. Lucas Bradley, one of the students, will be presenting the argument on behalf of the amicus. I will remain at counsel's table and am prepared to answer any questions the court wishes to propound to me. Thank you. Thank you, sir. Mr. Bradley? Judge King, and may it please the court, my name is Luke Bradley, and I am amicus counsel in support of Solomon Stratton. In 2005, the United States Supreme Court made clear the limitations of the Rooker-Feldman doctrine. It said that the doctrine applied in one specific scenario, when a state court loser attempts to overturn an adverse state court judgment in a lower federal court. It made clear that that was the only situation in which Rooker-Feldman applied, that it was not preclusion by another name, and that it did not serve to bar related suits. In 2006, this court reconsidered its own Rooker-Feldman jurisprudence in light of that ExxonMobil opinion. This court said that it would construe Rooker-Feldman narrowly and that it would not use it as a bar for claims that were, quote, in the context of a Section 1983 case in which a family alleges that the procedures used by the Department of Social Services and the removal of their children violated the Due Process Clause of the United States Constitution. And that involved the North Carolina courts? I'm sorry, Your Honor? That involved North Carolina court proceedings? Yes, Your Honor, the proceedings in the lower courts. In the North Carolina courts? Yes, Your Honor. But other circuits have had the opportunity to address such cases. And the Second, the Third, and the Sixth Circuits have all said that the Rooker-Feldman doctrine does not bar a challenge to the procedures of the Department of Social Services or to the initial removal of children when it was substantively unwarranted and that those claims can survive even the Rooker-Feldman bar. But you're trying to undo the rulings of the state courts of North Carolina? Respectfully, no, Your Honor. Mr. Stratton seeks damages. Now, there are parts of the complaint in which Mr. Stratton says that this court should, quote, void or enjoin the orders of the state. Who are you trying to get damages from, the lawyers or the judges? Who are you trying to get damages from? I mean, you sued everybody here. Yes, Your Honor. The proper parties for damages would be more accurately answered on remand, but certainly Mecklenburg County would be liable for damages. Well, you can't get damages out of them on 1983. That's because it runs to individuals, doesn't it, except in very limited circumstances. Yes, Your Honor. The agents of the county are also named in the suit, but— Well, how did they cause the state court to commit all this egregious error that you're claiming? This led them, lied to them? What did they do? Yes, Your Honor. In the complaint, Stratton alleges that the children were not neglected or dependent and that the agents pursued them, and that was an erroneous pursuit of those children. And they say that the condition of the Mecklenburg home— Then you can go behind a state court judgment and get to the individuals that misled the court under 1983. Is that what you're saying? Yes, Your Honor. And that's not barred by the Rooker-Feldman doctrine? No, Your Honor, it's not. But you're not challenging the state court? No, Your Honor, not directly challenging the state court. And other circuits have noted that even if a federal— How far did you go with that state court proceeding? Did you go to the Court of Appeals of North Carolina? Yes, Your Honor, the Court of Appeals for North Carolina ruled on the state court proceeding. And did you go to the Supreme Court of North Carolina? The Supreme Court denied certiorari on the merits, Your Honor. Did you go to the Supreme Court of the United States? It did not go to the Supreme Court of the United States, Your Honor. So you stopped it right there. Then you moved over to the federal court. Yes, Your Honor. But other circuits have noted that a federal court can issue a ruling that would seem to be in conflict with the findings that were found in the state court and that that does not violate Rooker-Feldman. The Sixth and Tenth Circuits have said that two judgments that, while they may appear inconsistent, are not the situation that Rooker-Feldman contemplates. What Rooker-Feldman contemplates is either a direct attack on the state court judgment itself, as in saying, void the state court orders, or it contemplates, as this court noted in Willner v. Frey, a situation in which the relief sought would have the sole effect of destroying the operation of the state court's judgment. Now, in Willner v. Frey, the plaintiff was in Virginia State Court, and the Virginia State Court said that the adverse possession statute of that state deprived him of land and transferred it to another. But he then sued the clerk of court and attempted to enjoin the clerk of court from transferring that land. And this court correctly said that Rooker-Feldman barred that suit because the sole operation of that suit would be to keep the state court judgment from going into effect. But here, Solomon Stratton is requesting damages and is attacking the procedures that went into his removal from his parents, not solely attempting to keep the state court rulings from occurring or not solely attempting to overrule those state court judgments. The plaintiff, there's only one plaintiff, and that is one of the children? Yes, Your Honor. The case originally started with both the child and the father, Jack Stratton, but Jack Stratton passed away in November 2001. Was the plaintiff here a party to the state court proceedings? Yes, Your Honor. Under North Carolina law section 7B-601, a minor is a party to child removal proceedings. And the Supreme Court in Santosky v. Kramer also noted that children and parents both have a heavy interest in the maintenance of the family relationship and that the default assumption from the court should be that the parent and the child are essentially in the same boat. And so there is strong evidence that Solomon Stratton retains the causes of action that originally were filed by both him and his father. Now, this court has recognized Rooker Feldman's limited scope in other cases. For example, in Devaney v. Virginia Department of Transportation, a state worker in Virginia sued because he claimed that his employment was erroneous and violated both state and federal employment law. The state courts heard his claim and found that it had no merit and dismissed it. He refiled suit in a lower federal court saying that the dismissal violated federal employment law. And this court said that that was fine, that what he was attacking was the procedure that went into his dismissal and the propriety of that dismissal, not the state court order itself. Likewise here, Solomon Stratton is attacking key elements of the procedures that went into his removal. For example, the Stratton family had... You're not attacking the state court judgments? No, Your Honor. For example, Solomon Stratton and his family had no opportunity before the removal of the children to contest it or to present evidence about the status of the children. Well, that sounds like you're attacking the state court judgment. You're saying that they didn't get the proper process before they were entered. Yes, Your Honor, but attacking the process that occurred before the state court judgment was rendered is not the same as attacking the state court judgment. How do you distinguish the two? It's distinguishable because the process was not the same as the final outcome, and more importantly... Some of these courts have used that language you almost got onto there, the inexplicably intertwined. Courts have used that language, Your Honor, but in Devaney this court explicitly said that it was no longer a separate bar and that the only test that remained was the test articulated in Exxon Mobil v. Sabic. More importantly as to your procedural question, Judge King, the Strattons were not a party to this suit until at the earliest, January 30, 2001, when they were given notice by the juvenile court that they should appear for the initial seven-day hearing. Under Lance v. Dennis, a party or a litigant that was not a party to the state court judgment absolutely is not barred by Rooker-Feldman. So any of the claims that arise from actions stemming from January 30 or before, claims that they were not given an opportunity to contest the deprivation before it happened, claims that the agents improperly pursued the children, claims that the agents misrepresented the state of the Stratton home, which is also supported in the joint appendix on pages 195 and 357, those claims cannot be barred because the Strattons, none of them, were parties to those proceedings. They weren't parties to the proceedings? What about the hearing that was held on March 12, 2001, the adjudicatory hearing? They affirmed the facts, didn't they? They affirmed the facts, Your Honor, but it is important not to conflate Rooker-Feldman with preclusion doctrine. I understand. It's important, and I won't do that, but what you're saying is that you can get around Rooker-Feldman by saying, well, I had adjudicated in state court, but I didn't use all of my defenses, and therefore I'm still there. They had an opportunity to contest the facts then, and they affirmed those facts. The Department of Social Services put them forward. They didn't get involved in a mediation agreement. Isn't that correct? Didn't they affirm those facts? They affirmed the facts, Your Honor, but just because the Strattons in a later proceeding might have had an opportunity to contest some of those facts does not mean that at the outset, when the removal happened and when the initial violations occurred, they were barred by Rooker-Feldman. What was the initial violation? The initial violations, the pre-deprivation violations, were the lack of a pre-deprivation hearing and the conduct of the neck. You're using the legalese. You mean when they came there and they found the children and they said that there was water leaking and the children seemed to be disheveled and didn't have food? You mean those circumstances? Those are the circumstances that Defendants Gretchen Caldwell and Catherine Dormany alleged were in the house, though it's important to note that affidavits by the Stratton neighbors on page 357 dispute those conditions. And that Officer Jeanette Siegel, a 29-year veteran, in her affidavit on page 195 says that the Stratton children and her professional opinion were not neglected or dependent. But why didn't those people come and testify before the hearing? It's unclear from the record, Your Honor, but it certainly supports a cause of action here. And the Stratton family should have had an opportunity in this non-emergency setting to contest the facts that surrounded the state of the Stratton family and the Stratton children before they were removed. You mean to tell me the state of North Carolina can't act forthwith if they see circumstances where a child is in need of services and they have to wait for a hearing? Certainly this circuit has said that if there is an emergency that threatens a child, it is absolutely within the rights of the Department of Social Services to act immediately. As described, I know your clients contest the facts of it, but if what was observed is true, do you think those circumstances warranted that? Not necessarily, Your Honor. Ten children, that little food, stagnant water, disheveled. You don't think that that was an emergency situation evidencing a child in need of service or children in need of service? I think it's telling here, Your Honor, that on the day that Catherine Dormanee and Gretchen Caldwell went and examined the Stratton family, they did not take the Stratton children. And then the Stratton children were ultimately removed on January 30th, 40 days later. So if this had been a true emergency situation, it seems unlikely that the Stratton children would have been allowed to remain with their family that day, much less for the 40 days that intervened. They were trying to get cooperation, weren't they? They were saying, let us in. They wouldn't be allowed in. The children were marched to a home next door, and then the tenth child comes out. And now they're punished because they didn't take the strongest arm they could have? No, Your Honor. It simply goes to the idea that the Stratton family should have had an opportunity to contest this, and it's important to note that at this early stage, the merit of the contestation, whether it would have presented a legitimate chance for the Strattons to alter their fate, that's a matter for discovery, and those are questions that would be well served by discovery here. But it certainly states a substantial Federal cause of action under other circuits precedent and under the implied precedent of this Court in Jordan by Jordan, which said that unless an emergency is pressing, there is an incredibly important constitutional interest in a family allowing itself to remain together and a family being able to present its best case. So certainly the fact that the Department of Social Services didn't use its strongest arm possible does not irrevocably destroy their case, but the facts as taken here coupled with the affidavits of Jeanette Siegel and of the neighbors indicate that the Stratton children certainly were not in an emergency situation and should have been given an opportunity to contest that. Well, Mr. Solomon was represented by counsel, was he not? A guardian ad latim, that's correct, Your Honor. He was represented by counsel. Yes, Your Honor. Counsel could have presented evidence, correct? Counsel could have presented evidence, Your Honor, and the record is unclear on what evidence was presented. But just because a court could have ruled on that issue does not mean it's Rooker-Feldman precluded because it is not an attack on the actual judgment and the actual relief afforded by that court. Well, it is because the court accepted the facts as presented because of the affirmation of the Strattons. Yes, Your Honor. And that became the order of the court based on those facts. How is that not an attack on that finding of fact and the order that resulted therefrom? Judge King, may I? You go right ahead. Absolutely. How is that not? Your Honor, those facts might have preclusive effect on remand, but in terms of attacking what the court did, what the court actually implemented, that is not an attack on what the court implemented. It's an attack on how the parties involved went about securing that court order, and that is the key difference. What the court did or did not consider isn't the relevant issue for Rooker-Feldman. The relevant issue is the difference between what the court did and how the parties involved went about securing that. Now, you say you're not attacking the state court judgment. Do you agree you're attacking the state court proceeding? Attacking the? Yes, Your Honor. Attacking the proceedings. We are attacking. Yes, Your Honor. Aren't they wrapped up into the judgment? No, Your Honor, they're not, and Supreme Court precedent in Texas v. Lesage and Kerry v. Pythas clearly indicates that even if the result of a proceeding would be the same, a plaintiff has the right for the proceeding to be fair and for it to be played by the correct rules, which is the claim that the Strattons are making here today. So you have a right to go all the way through the state court system of North Carolina, abandon your right to go to the Supreme Court of the United States, and simply move over to the state federal district court and start all over. The Strattons absolutely do not have the right to go to the federal court and say, give us our children back. That is foreclosed to them by Rooker-Feldman. But if they say the procedures used here were incorrect and we deserve damages because our constitutional rights were violated, that is a separate claim. It does not directly attack the outcome of the state court proceeding, and that is not barred under Rooker-Feldman. Thank you. You saved some time. We appreciate it. Thank you. And we're going to hear from the Appellees. First of all, Mr. Harrington. Your Honor, I think this reflects this. I plan to reserve five minutes for Mr. Stratton to argue. Yes, sir. May it please the Court, I am Robert Harrington of Charlotte, North Carolina, arguing on behalf of, as our brief indicates, the Appellees as a group. And I'd start with two points that I think the discussion with Appellant's Counsel, or Amicus Counsel, has made clear. The claim that Mr. Stratton or the Strattons, the plaintiffs make, is a claim that attacks the result of or attacks the state court orders. There are several orders, the first order being the order of interference directed towards Joan Stratton. But, number one, it is an attack on the state court orders. And number two, and that was concluded by the magistrate judge in the opinion, the report that was adopted by the district court judge. The end at pages 7 and 8, they're appendix 367 and on. Pages 7 and 8 of the report and recommendation, the magistrate makes clear, the magistrate judge makes clear, Judge McDonald, that the core of this claim or the claim itself was an attack on the state court orders. That was not objected to in the district court by Mr. Stratton. That is the finding of the district court. It is not objected to. And, in fact, it was the core of the claim, as I believe the Amicus Counsel has described. You mean it wasn't objected to on the review of the report? Yes, Your Honor. There was no objection to that. In fact, the objection was, as it was throughout in many regards, that Judge McDonald and the district court judge had become a part of the conspiracy, that, in fact, the Judge McDonald's decision, his recommendation, should be void as a part of the fraud. But there was no objection to his conclusion. It was the core of his conclusion that the claim is an attack on the state court orders.  Back in the 18th century? That is a part, and that goes, Your Honor, to our substantiality defense, which we also think is a separate reason that the court could use for finding that there is no jurisdiction here. Yes, that is exactly right. There is a claim that there is a conspiracy, a Luciferian conspiracy, a conspiracy that involves the Rothschilds and the Rockefellers and on and on. The Federal Reserve is supposed to be taking care of the North Carolina part of it. The Federal Reserve is a part of it. And, in fact, every judge who touched this matter, in fact, some judges in the appellate courts who there's no claim they actually touched the matter, have been joined to this vast conspiracy. But the second point I'd like to make... How many defendants are here? 30 or so? I have not counted them. I believe it is in excess of 20. It is district court judges in North Carolina, superior court judges in North Carolina, court of appeals judges and former judges in North Carolina, and then various nonprofit organizations. Federal judges too? It ended up with Judge Kare, Magistrate Judge Kare. South Carolina handled it. Correct. It ended up because Magistrate Judge Kare, who is a magistrate judge in the Western District of North Carolina now, was the district judge who issued the first order. That was the order to go get the children. He was the state district court judge. You're not talking about federal district judges. He was the state district court judge. State district judge is the lower court judge, whatever you call it down in the North Carolina system. It's a district judge in a superior court, and then up to the court of appeals, right? That's correct, Your Honor. And the district judge has authority or jurisdiction to handle these types of family matters. He was the state district judge. He was the state district judge at the time, and then the recusals resulted because he subsequently became a magistrate judge in federal court. But they sue him, but they say they're not attacking the state court judge. That's what kind of buffaloed me about how to deal with this thing. Well, I think that's exactly right. They sued him, and he was the author of the first order. They sued Judge Yvonne Mims Evans, who was the author of the second order. I believe they also sued Judge Sharp and Judge Miller, Judge Killebrew Miller, who were the authors of the other orders. And so it's clear, as Your Honor points out, not only from who was sued, but from the allegations in the complaint to the extent they have any essence at all. They are about, as the magistrate judge concluded, they were about the state court orders. The second point I'd make is that there were two one-primary proceedings in the state court in North Carolina, in district court in North Carolina. The first resulted in that initial order by now magistrate Judge Kare, but then state district court Judge Kare. The Stratford children were parties to those. The Stratford parents participated in those, and, in fact, Mr. Stratford, so there was the initial proceeding to determine abuse and neglect and the second proceeding to terminate the parents. Mr. Stratton, Jack Stratton, filed an appeal to the North Carolina Court of Appeals from that first action. North Carolina Court of Appeals, I believe it was Judge Gere, who I believe is also a defendant, Judge Marta Gere concluded that that appeal was moot because subsequently the court had terminated parental rights. All bundled up in this state court orders, state court decisions that were being attacked, and the Strattons were parties. It's an error, actually, to say, and if you look at the record, and I actually have a record, but if you look at the record of the petition, the initial petition here was the petition to prevent or prohibit interference by Joan Stratton in an investigation, but the caption, the parties, and the court can take judicial notice of the fact that the parties were the Stratton children, and, in fact, in that same proceeding, as they had a right to do, Mr. Stratton and his wife participated in those proceedings. There was no separate, the record is clear from the documents that are attached to Mr. Stratton's filings in the federal district court. The record is clear that there was no separate proceeding involving Joan Stratton, the aunt. There was a proceeding involving the Stratton children and their parents and their parents' rights, and then there was a subsequent proceeding that resulted in the termination of those parents' rights. Mr. Henry, what I can't understand is that when was the court apprised of the circumstance or ever of the children when they were in the new home, the new home? It seems like everything is based upon the observations made where they were first found, and we know they subsequently moved. But I see nothing that indicates that the court was made aware of or that became the subject of the evidence as to what the conditions were where they moved to. Well, from the documents that are in the district court record here, I don't know that that timing is clear. What is clear is that, as I believe, Judge Greger, you pointed out in response to questions or during questions earlier, that the Strattons had the opportunity to offer whatever evidence. In fact, the evidence, the testimony and the affidavit of the Gaston County policewoman who is in the record, that was all presented during those state court proceedings. There was nothing to present all of the information relevant to those, first, the abuse and neglect proceedings, and second, the termination of parental right proceedings from coming out. All of the Strattons participated in those proceedings. That was the place to do it, and what is now being attacked is the determination that was made in those orders. Mr. Adden actually may be able to address with a little bit more specificity what happened in those proceedings, but I think that is at least the answer that I would give is that there were due proceedings had, and in those proceedings the Strattons had an opportunity to raise all of this evidence, and what they attack now as a part of this enterprise, and I could argue a little bit on that for substantiality purposes, as a part of this enterprise that Mr. Stratton lost his relationship with his children. So whether it was done or not, I think for the most part it is in the record that there was evidence offered because we know about the evidence from the policewoman in Gaston County, but they certainly had the opportunity in a full-blown state court proceeding that went on for multiple years to air all of that. The second point I'd make, and this is since we're a little bit off of what's clear in the record, the initial investigation, the initial visit was to the home in Mecklenburg County. What appears from the record to have happened then is the Strattons moved to avoid being at that home. Now that's not, we don't know that for sure, and I don't have the material that's not in the record from the district court, but those determinations were made that you described based on the home that the Strattons were living in at the time, and then they moved from Mecklenburg County to Gaston County. So I hope that's an answer to the question. On the substantiality point in the few minutes that I have left, as a separate ground for a 12B1 subject matter jurisdiction challenge, I mean this is, it really, it falls well in line with the other cases where courts have found that claims were either, and there are two steps to it, either so frivolous on their face, or the courts use the words bizarre, that they fail to establish federal court jurisdiction. And here, if the court reviews the record, reviews the amended complaint which is in the record, all of this is tied to, as Judge King said at the beginning, this vast conspiracy that goes back, and I'll forget the centuries, but it goes back to the 11 or 12. 1744, I think. That's, I think you have it on the tip of your tongue, Judge King, and all of this is tied to the conspiracy. In fact, even the claims about what the county did, and in fact, later the claims about what the federal judiciary has done, get tied to this conspiracy that is designed to break up the family in general, to combat religion, and the various other things that are alleged in this conspiracy. It's all a part of the whole. The Amicus Council has, for purposes of appeal, tried to strip out pieces here and there of the complaint to make a claim. But to the extent this complaint does anything, it is, again, it goes back to it's barred by Rooker-Feldman because it's an attack on the district court orders. But it's also just its very essence is like the other cases in which this court and other courts have said these types of allegations simply fail to state a claim that is substantial enough to survive in federal court. It's the first part of the substantiality test. The second part of the substantiality test is the fact that to the extent there can be divined in these claims some kind of claim that is not patently frivolous, it's not a substantial federal claim. So if you look at the amended complaint, for example, one of the arguments is that Mecklenburg County somehow uses different documents than the state of North Carolina uses for these filings. If anything else other than an attack just on the orders itself, and I'd argue that that itself is an attack on the state court orders. Mr. Hardin, you raised the question, I guess it's one of the dangers of speaking, keep talking. You said that there's nothing, if you cut away the pericope of maybe something here where they're saying that based on, as alleged, their religion and the fact that it's a biracial family motivated this lying and exacerbating and fabricating the conditions in order to break up their family. Don't you think that the 14th Amendment may give silence to that type of deprivation and lack of equal protection in the law? Your Honor, Judge Gregory, not under these circumstances. I think when you read this complaint as a whole you can pick certain specific things that are said, but this again goes back purportedly hundreds of years. It is a part of this overriding conspiracy. And number two, to the extent there were claims about the process that went into the district court orders, they are an attack. Ultimately what the Strattons are asking, ultimately what Amicus is asking, is phrased as an attack on the district court orders, the state orders. The state courts were wrong to separate the family from the children. That is the essence of the order. Everything that was done was done pursuant to those orders. So I think number one, and you're probably right, I probably did wind on that issue, but when you read this amendment complaint as a whole, both for purposes of substantiality and for purposes, frankly, of 12b-6, what you're left with is a, in the words of the court, bizarre and fanciful scenario. The other point I'd like to make, and I think we've touched on, I'm going to run out of time, we've touched on the substantiality piece in addition to the Rooker-Feldman piece, but I'd point out that nowhere, not one place in the briefs of the Amicus, is there a claim that any of the, is there an argument that any of the other defendants, and as Judge King pointed out earlier, there are a vast number of other defendants ranging from state court judges to various non-profits who have been hauled into this litigation and have to defend it, including my direct client, the Council for Children's Rights. And there's not one allegation in the initial brief, the original brief, or the reply brief about conduct by those defendants. So initially, first of all, for 12b-6 purposes, there is simply not a claim, nor is there argued to be a claim against any of the defendants other than Mecklenburg County. Mecklenburg County is the only defendant that's mentioned in the briefs supplied by Amicus in this case. With the indulgence of Lead Judge King, may I ask a question? Go ahead. I want you to respond. Mr. Bradley eloquently stated his position, so I apologize to him for doing a bad job of what he said, but as I understand, I want you to address this. It seems to be he's saying, hypothetically, but it seems to be he's saying is this, I want you to respond to it, that Rockefellman is not a barring principle if you lose in the state according to order, but if someone at that hearing or that proceeding perjured themselves, and you knew it was perjured at the time but didn't object to it, but they perjured themselves and they were state actors in 1983, you could come here because you're not attacking what the ultimate order was or the result. You're attacking that there was perjury, even though you didn't object to it and you knew it was perjured at the time. Can you respond to that? Yes. I believe counsel did cite to some cases from other circuits addressing that issue and at least indicating that a fraud perjury in the proceeding might affect the Rockefellman analysis but not the substantiality analysis and the other analyses. Sure, right. This court, I don't believe, has held that. That's certainly not what has not held that, has not addressed that specific issue. It does not follow from Devaney, and in fact, the policy, we believe, is, and the policy that still underlies Rockefellman, even after the ExxonMobil case, is that matters that were resolved leading to the order in the district court, it is still an attack on the order of the district court. And so, yes, I believe there is authority from at least one other circuit, but from other circuits that appears to touch on that point. There is no authority that we're aware of from this court, and we believe that the policy underlying the reasons for Rockefellman is betrayed by allowing the court to second guess and delve into the proceedings in the state court. In fact, what you've outlined, Judge Gregory, and what I believe Amicus has outlined, is in fact something that is purported to have happened in the proceeding itself, where there was every opportunity to address it and every opportunity to address it as a collateral matter in state court rather than invite the federal courts to intervene and declare, as he has asked, void, ab initio, corrupt the state court order. Thank you. Thank you, sir. Mr. Adden, pleased to hear from you. May it please the Court. I'm Robert Adden. I represent the Mecklenburg County defendants, including myself. I'm one of the defendants. I was involved in the termination of parental rights case. I think I became involved in this case back in the fall of 2002, so it's been over ten years that I've been involved with this case. I want to clear up some of the factual misstatements that are in the Amicus brief and also some of the misunderstandings to make sure the Court is clear about what actually did happen in the state court proceedings. To go to Justice Gregory's question about the false affidavit, there's some allegations about there being a false affidavit or something. And that's what occurred is in January 2001, when the Department of Social Services filed a petition to go and actually to say that the children were neglected and requesting the state court to enter an order authorizing the department to go and pick up the children, Gretchen Caldwell, a social worker with the department, she filed an affidavit as to status of minor child. That affidavit, which is in the record, the purpose of that affidavit is basically to inform the state court as to whether or not there are any other judicial proceedings regarding custody of the children that are at issue. It could be a divorce proceeding. It could be a custody proceeding from another state. And the purpose of that affidavit, when you read it in its entirety, is are there other custody proceedings pending? In that affidavit, Ms. Caldwell stated that the exact question, I believe, is state where the children have lived for the last five years. And she stated that they lived with Jack and Kathy Stratton at an address on Eastway Drive in Charlotte, North Carolina, from 1990 to the present. And it is that, the fact that she said 1990 to the present, that they consent is a false affidavit because at the time, in January 2001, the children and the family was actually in Gaston County across the border. So they say that's a false affidavit. But you've got to read that affidavit also in the context with the petition because the petition was filed the same day. And the petition was signed by Ms. Gretchen Caldwell also. And that petition was verified. She verified that petition under oath. And in that petition, she stated the document is actually document 26-8 in the lower court record. But in that petition, she states the names of all the children. She states the address for the family. And the address is Horseshoe Drive, Mount Holly, North Carolina. And Mount Holly is not in Mecklenburg County. It's in Gaston County. A district court judge in Mecklenburg County would know that there's no part of Mount Holly in Gaston County. Are those two points close to one another? Oh, yeah. Mount Holly is actually right across the river. It's right across the river. The river, the county line? The river's county line. So one's on one side of the river and one's on the other? Yes. But also, on the second page of the affidavit, she says, upon information and belief, they have relocated to Gaston County but have gone underground. DSS has concerns regarding the quality of care the children might be receiving and the environment in which they might be living. So my point is when you read the affidavit where she says that they lived on Eastway Drive from 1990 to the present and you read that in conjunction with the petition that she filed at the same time, where she says they've relocated to Gaston County, it's clear there's no misrepresentation to the court. Is it a jurisdictional issue on the North Carolina law? Well, would another county be responsible for the children there? The jurisdiction is with the state court. And, in fact, the court order, the initial order from the seven-day hearing, what happens is you file a petition. In this case, they filed a petition and asked for custody. Judge Evans entered a non-secure custody order that the criteria exist for place of children in foster care. Judicial orders enter, go find these children and place them in foster care. That's an order from the court to the Department of Social Services. And then they have a post-deprivation hearing. What's the jurisdiction of that court? The jurisdiction of the court is the state of North Carolina. The whole state? Yes, Your Honor. You don't have circuit in the district? Mecklenburg County District Court concerns allegations regarding children who are in Mecklenburg County. That's what I'm saying. The children weren't in Mecklenburg County. Well, the seven-day order, which is part of the record, which is... Is that right? Is that right? The children weren't in Mecklenburg County? They did go to Gaston County to pick up the children. No, but that's where they live. Well... I'm asking you, what is the jurisdiction of the court that is the order? The jurisdiction, it is the state court... I know that. ...in Mecklenburg County. All right, what is its jurisdiction? In the initial seven-day order. Counsel, I must not be speaking English. All right. I mean, I'm from Virginia. In Virginia, we have courts of record, and they have prescribed areas within the state. Are you telling me that that court has jurisdiction over the whole state of North Carolina? No, Your Honor. All right, what I'm asking you then... Mecklenburg County. ...what are the contours of its jurisdiction geographically? Children who are in Mecklenburg County. Okay, and those children were not in Mecklenburg County. At the time the court assumed jurisdiction over those children, they were in Mecklenburg County. Because the court assumed jurisdiction of the children when Judge Koehler entered an order in December 2000. He entered the order, and his order stated that the court, Mecklenburg County Court, was assuming had jurisdiction over these children. And not only did Judge Koehler's order say Mecklenburg, because they were in Mecklenburg County when that order was entered in December 2000. And what was his order? His order was December 22nd. To do what? What did he order? His order was for DSS to find the children and to ensure their needs are met. Find the children? Yes. An order to find the children. Okay. Then Judge Evans enters an order for DSS to go pick up the children, knowing that they're in Gaston County. DSS does. They come in to have a post-deprivation hearing. Judge Evans is a district court judge in Gaston County? Pardon me? Judge Evans is in? No, Your Honor. Mecklenburg County. He's in Mecklenburg County. She's in Mecklenburg, yes. There's a seven-day order that's entered, and the seven-day order says that YFS has filed the affidavit, the child is fiscally present in the state, and the state is the home state of the child at the time of the commencement of the proceedings. This is an order that was entered by Judge Evans on February 2nd, 2001. This is an order that Judge Evans entered at a hearing when the parents are present and they're represented by counsel. The parents said they were told that this is not the time for you to speak. They had counsel representing them. They are there. They're present. They had ample opportunity to contest these allegations, and, in fact, they did raise all these allegations, all these allegations about Mecklenburg County not having jurisdiction, all of these allegations. Why didn't the Department of Social Services inform the court of the circumstances where the children were living present? Why did they seem like fix the record almost in stone as to how the children were found in December and did nothing to seem to me to amend that to say what? Let's say, for example, it seemed to me they were having a bad day. It's been tough economic times for everybody. I don't think you take away children because their parents are poor, because it would. I think North Carolina and most states would be full and overrun by children being taken by the state. So poverty alone can't do it. So this family, let's move to another place. Don't you think it's important to find out and let the court know what and how the children are living at the new place? I see nothing in the record that it was ever amended by the state to say what that was other than a fix in stone what the December circumstances were. Can you respond to that? There was evidence of that in the termination of parental rights proceeding. What were the conditions? Was the ceiling leaking? Was there stagnant water? Was there food in the refrigerator? Was there heat? Did they have clothes? Were they clean? I don't see anything in the record. It seemed to me the state. That's capital punishment as far as I'm concerned for a parent to take your children away. That's the worst thing you could do for a parent in terms of parent relationship. Why wouldn't the social services say, first of all, you went to another county where they were living and then say, well, we found them in December like this, but this is what they're living like now. In this record, I don't know whether they were living in a palace. Do you from the record? If the court takes judicial notice of the order terminating parental rights that Judge Sharp entered in June 2003, a 65, about a 60. That was two years later. They had their children for two years. She addressed this, that the family was, this is about the Gaskin County residents. The family was located in a one-bedroom cottage-style home. Kathy Stratton, the mother, acknowledged that this home was not an appropriate environment for the children. This is in the termination case again. The mother acknowledged to a social worker this home did have electricity and was too small for the family. Like the previous home, this cottage was sparsely furnished. The home did not contain any educational materials to homeschool the children. Similar to the previous home in Charlotte, this home contained very little food. Parents didn't know the identity of who owned this home. They didn't have any written lease for this home. The utilities were not in their name. This was just, they were fleeing Mecklenburg County. They were fleeing from the Department of Social Services. They were fleeing from the court. Judge Koehler had assumed jurisdiction over these children. And it was the Mecklenburg County Department of Social Services' job to locate these children. And Judge, they located them. They informed Judge Evans that they were located across the county line. And Judge Evans entered an order that said, go pick up these children in Gaskin County. Now they are attacking that judge's order. They not only are they attacking the judge's order, they are attacking the judge herself in this federal court proceeding. And they're saying, and these issues were raised in the termination of parental rights hearing. They filed a motion to dismiss for lack of jurisdiction. It's in the record document number. Counsel, why do you think it was important to note that the children were biracial? That is the plaintiff's allegations in the amendment. There's nothing, I don't believe there's anything in the petitions that these children are biracial. The race of these children has nothing to do with the fact that they were living in a home that had holes in the wall, in the ceiling, stagnant water in the kitchen, no beds, no schooling. They lived in Mecklenburg County for 10 years and did not go to school. These children had serious developmental delays, had speech impediments. They were difficult to understand when they were placed in foster care. And some of them had developmental delays. One of them appeared to be blind, but he wasn't, I don't believe. And these children, this family, not only did they refuse services offered by the social services, but they fled. They were trying to hide from the Department of Social Services. Mr. Stratton had ample opportunity to cooperate, to regain custody of his children, and he never did. He refused to obey any of the court orders. The record is clear, and instead, every judge who touches this case gets brought into a civil conspiracy concerning pedophiles and homosexuality and sexual abuse of children. And if I'm a little bit indignant, I am because he alleged in the complaint against me personally, he didn't say anything about me and sex abuse, but it's in this complaint, this amended complaint about how President George H.W. Bush and other high-ranking officials do some pedophilia in Bohemia Grove, and it does rank me that they put that stuff in a federal complaint and then come up to this court asking for relief. All they want to do, as set forth in this complaint, is state that the state court judgments are null and void, and Rooker Feldman prohibits that. Are there any other questions? Thank you very much. We appreciate it. Thank you. Mr. Bradley? May it please the court, first, Judge Gregory, as to your question, the Judge Kerr's order did note that the family is biracial on page 209 of the appendix. I know it did. I read in the record. I didn't want to. He was already, as you see, emotional about it. I understand that. That's why I didn't want to go further. But it's in the record. Go ahead. Yes, Your Honor. As to your perjury hypo, Washington v. Wilmore from this circuit does speak to that. In Washington v. Wilmore, the police officer used unconstitutional coercion to get a complaint out of a mentally incompetent criminal defendant. And that testimony, that confession, was read into the record at trial and, as the court noted, was a key element of the conviction. Then the defendant there sued on the basis that the coercion itself was unconstitutional. This court said that was fine and that was not barred by Rooker-Feldman because even if it would serve to grossly undermine the proceedings in the criminal trial itself, it was a separate cause of action. And that goes to what Amicus Counsel has argued all along, that explicit challenges are barred, and Amicus Counsel has always conceded that. But claims that something could have been litigated or should have been litigated below are dealt with by preclusion, not by Rooker-Feldman. And the defendants repeatedly argue that this is something that Mr. Stratton should have alleged in the state court. But in Devaney v. Virginia Department of Transportation, Mr. Devaney had a chance to allege that his termination was improper in the state court. In Washington v. Wilmore, the defendant had the opportunity to allege at trial that his confession hadn't been proper. But that didn't matter, at least under Rooker-Feldman. Now, in Devaney, this court said that Rooker-Feldman had been misapplied, and it remanded for a hearing on whether preclusion was appropriate. That might be appropriate today, and if this court is concerned about preclusion, then that is the route that it should take and that it has taken. But fundamentally, Mr. Stratton does not simply attack state court judgments. Now, Judge Gregory, you noted that having a child taken away for a parent is essentially capital punishment. It's one of the worst outcomes imaginable. And this hearing today is not a trial. And while the defendants have been involved in this litigation for quite some time, the fact that they are indignant that the litigation proceeds does not give this court or the defendants the authority to dismiss this case improperly under the Rooker-Feldman doctrine or under the 12b1 or 12b6 bars. Here, Mr. Stratton alleges core constitutional claims. He says that he and his family were separated without any opportunity to explain their living conditions. He says that their conditions were better than were represented by the agents of Mecklenburg County DSS. He says that they were not given any opportunity throughout the proceedings to know that they could discharge their counsel or have their own counsel. He alleges specific procedural issues. Now, as said, this is not a trial, and this is not a situation in which this court must find the facts, even though the record from the Siegel affidavit and the neighbor affidavits does support that the Strattons have a substantial claim. It's easy to do today what the defendants have done in their brief and say parts of this complaint can't possibly be right. There can't possibly be a conspiracy that goes back to the 18th century, and Amicus Counsel concedes that that conspiracy is not real. But what is real and what Mr. Stratton can speak to is what the Stratton family saw with their own eyes, the procedures that they saw. And while Amicus Counsel does not speak for the Strattons, this case is about every child that comes before this court, comes before this circuit, and may never get the chance to litigate genuine constitutional issues because of the district court's misapplication of the Rooker-Feldman Doctrine. It's also about federalism. I mean, this court, the federal district courts, there simply aren't appellate courts for state court proceeding, and we can't get that kind of stuff started. I mean, the Supreme Court has said we shouldn't. I mean, you can go right up the line on all these issues in the state court of North Carolina and, if you're aggrieved, to the Supreme Court of the United States without going to a federal district court. Absolutely, Your Honor, and that is the reason that Rooker-Feldman prevents Mr. Stratton. That's the way our system is structured. Yes, Your Honor, and that is the reason that Rooker-Feldman prohibits Mr. Stratton from coming before this court and saying, the court below was wrong, put me back with my family. But just as Section 1983 gives federal causes of action for constitutional violations in other contexts,  Rooker-Feldman should not keep those claims out of court, and this court should not say that here today. Thank you. Thank you, Mr. Bradley, and also your colleague, Mr. Noller. We want to appreciate both you, the work of you gentlemen from the University of Georgia, and Professor Rutledge, we appreciate your assistance with these young men in this case. Thank you very much.
judges: Robert B. King, Roger L. Gregory, Barbara Milano Keenan